*In re* WOOD AND HENDERSON.

CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 167.  Submitted March 6, 1908.—Decided May 18, 1908.

Congress has the right to establish a uniform system of bankruptcy through-out the United States, and having given jurisdiction to a particular court to administer the property, that court may, in some proper way, call upon all parties interested· to appear and assert their rights.

The bankruptcy court, or its referee, in which the bankruptcy proceedings are pending, has jurisdiction under § 60*d* of the bankruptcy act to re-examine, on petition of the trustee, the validity of a payment or transfer made by the bankrupt in contemplation of bankruptcy to an attorney for legal services to be rendered by him, and to ascertain and adjudge what is a reasonable amount to be allowed for such services and to direct re-payment of any excess to the trustee; and if the attorney is a non-resident of the district an order directing him to show cause or a citation or notice of the proposed hearing may be served without the district.

Jurisdiction to reëxamine such a transfer was not conferred upon any state court..

The trustee may not maintain a plenary suit instituted in the District Court where the bankruptcy proceeding is pending against such attorney upon service of process made on such attorney, if he is a non-resident of that district, outside of the district. ·

THE facts are stated in the opinion.

*Mr. W. Scott Bicksler, Mr. Edmon G. Bennett* and *Mr. George L. Nye* for petitioners.

*Mr. Harvey Riddell* for respondent.

MR. JUSTICE DAY delivered the opinion of the court.

This case is here upon certificate from the Circuit Court of Appeals for the Eighth Circuit.

The facts certified are: R. H. Williams had been adjudicated a bankrupt on January 13, 1904, in the District Court of the United States for Colorado. On the seventeenth of May, 1905, it appears that the trustee in bankruptcy (following § 60*d*) petitioned the court, representing that the bankrupt in contemplation of filing the petition in bankruptcy did pay to certain counsel, the petitioners in this case, at Hot Springs, Arkansas, $5,000 in cash, and transfer to them a certificate of deposit for $3,000, and a certificate of deposit for $1,795; that said money and property were transferred to said counsel, Wood and Henderson, by said Williams in contemplation of the filing of a petition in bankruptcy against him, within four months of the filing thereof, for legal services to be rendered thereafter by said Wood and Henderson. They were thereupon ordered to appear at the office of the referee, in the city of Colorado Springs in the State of Colorado, on June 20, 1905, and show cause, if any they had, why an order should not be made determining and adjudicating the reasonable value of the services rendered by the said attorneys for the said bankrupt, and that in default of their appearance the referee would proceed to hear and determine the matter on the evidence presented. It was ordered that a copy of the citation, together with a copy of the petition, be served on Wood and Henderson at Hot Springs, Arkansas, at least twenty days before the day set for the hearing. On the first day of August, 1905, the referee in bankruptcy, holding a court of bankruptcy, made the following order:

"It appearing to the court from the evidence that a copy of this application, together with a copy of the order to show cause issued thereon, returnable on the twentieth day of June, A. D. 1905, was duly served on said J. B. Wood and Jethro P. Henderson on the twenty-sixth day of May, 1905; and that

the said J. B. Wood and J. P. Henderson, not having appeared on the said twentieth day of June, 1905, herein, or shown to this court any cause why this court should not proceed to reexamine the said transaction; and it further appearing to this court that the matter of the said hearing has been duly continued from the said twentieth day of June until the first day of August, 1905, and that due notice of such continuance has been served upon the said J. B. Wood and Jethro P. Henderson, and that the said J. B. Wood and Jethro P. Henderson are fully advised that this hearing would be duly had on this day; and the said J. B. Wood and Jethro P. Henderson not having shown cause against the said application, and the court having heard the evidence on the part of the said trustee in support of the said application, and the arguments of counsel thereon, and the court being fully advised as to all matters of law and fact arising herein, the court doth find and adjudge that the said R. H. Williams, in contemplation of the filing of a petition in bankruptcy against him did, on the fifth day of December, 1902, transfer to said J. B. Wood and Jethro P. Henderson, attorneys at law, for services to be rendered, the sum of $5,000, lawful money of the United States, and one certificate of deposit for the sum of $3,000, issued by the Security Bank of Hot Springs, Arkansas, to the said R. H. Williams, and one certificate of deposit issued by the Arkansas National Bank of Hot Springs, Arkansas, to R. H. Williams for the sum of $1,795, the said two certificates of deposit having since been collected by the said J. B. Wood and Jethro P. Henderson. And the court doth find on reëxamination of the said transaction that the sum of $800 is reasonable compensation for the services rendered the said bankrupt under the terms of the transaction by which said money and property were transferred to the said J. B. Wood and Jethro P. Henderson, and doth find and adjudge that the said transaction is valid to that extent only, which the court determines and adjudges to be the reasonable value for said services."

It was thereupon ordered and adjudged that the transaction

was valid as to the sum of $800, found to be the reasonable value of the services, and the trustee was ordered to proceed to recover the excess, being the sum of $8,995, from said Wood and Henderson. Thereupon, and after this order, Wood and Henderson appeared before the referee for the sole purpose of challenging his jurisdiction to make the foregoing order, upon the ground that neither the parties nor the subject-matter was within the jurisdiction of the District Court of Colorado. Thereafter the case was certified to the District Court, and in that court Wood and Henderson renewed their objection to the jurisdiction of the District Court, and that court affirmed the ruling of the referee; thereupon Wood and Henderson filed their petition in the Circuit Court of Appeals for a review of the order of the District Court, and challenged the jurisdiction of that court and the referee to make the order aforesaid, because they were citizens and residents of Arkansas; that the service of the notice of proceedings was made upon them at Hot Springs, in that State; that they had not appeared or submitted to the jurisdiction of the District Court except to raise the jurisdictional questions; that the subject-matter of the proceedings was certain transactions which took place wholly within the State of Arkansas. Thereupon the Circuit Court of Appeals certified three questions to this court, as follows:

"1. Has a District Court of the United States sitting in bankruptcy in which the proceedings in bankruptcy are pending, or its referee, jurisdiction under section 60*d* of the bankruptcy act to reëxamine, on petition of the trustee in bankruptcy, the validity of the payment of money or the transfer of property by the bankrupt, made in contemplation of the filing of a petition by or against him in bankruptcy, to an attorney or counsellor at law, for services to be rendered to him by such attorney or counsellor, and to ascertain and adjudge the extent of the reasonable amount to be allowed for such services, and to direct that the excess may be recovered by the trustee for the benefit of the estate, in the instance where

such attorney or counsellor at the time of receiving such payment or property and at the time of the proceedings in question was a non-resident of the State, or of the district, in which the bankrupt court instituting such inquiry is located, and where the money or property was so paid to, and is held by, such attorney or counsellor outside of the district in which such court of bankruptcy sits, and the order to show cause, citation, or notice of the proposed hearing is served upon him without, and not within the district in which such court of bankruptcy sits?

"2. If a District Court sitting in bankruptcy has this jurisdiction, may it exercise it by means of an order and citation to show cause duly served on the attorney or counsellor outside of the district of the court of bankruptcy, such attorney or counsellor being a non-resident of the district in which the proceedings in bankruptcy are pending?

"3. May a plenary suit instituted by the trustee in bankruptcy against such attorney or counsellor in the District Court where the estate in bankruptcy is being administered be maintained upon service of process upon the attorney or counsellor, who is a non-resident of the district, outside of that district?"

An answer to these questions involves the construction of § 60d of the bankruptcy act of 1898, which reads:

"60d. If a debtor shall, directly or indirectly, in contemplation of the filing of a petition by or against him, pay money or transfer property to an attorney or counsellor at law, solicitor in equity, or proctor in admiralty for services to be rendered, the transaction shall be reexamined by the court on the petition of the trustee or any creditor and shall only be held valid to the extent of a reasonable amount to be determined by the court, and the excess may be recovered by the trustee for the benefit of the estate."

This section does not undertake to provide for a plenary suit, but for an examination and order in the course of the administration of the estate with a view to permitting only a

reasonable amount thereof to be deducted from it because of payments of money or transfers of property to attorneys or counsellors in contemplation of bankruptcy proceedings. There is no provision for the enforcement of this section in another court of bankruptcy, where the bankrupt may be personally served with process in a plenary suit; such court is not given authority to reëxamine the transaction. No other court has authority to determine the reasonable amount for which the transaction can stand. *Swartz* v. *Frank*, 183 Missouri, 439.

Section 60*d* added a feature to the bankruptcy act not found in former acts, regulating practice and procedure in bankruptcy, therefore adjudications upon other provisions of the bankruptcy act, or concerning the judiciary act giving jurisdiction to the courts of the United States have no binding effect in the construction of this section.

This is not a case of preference, where part of the estate is transferred to a creditor so as to give to him more of the estate than to others of the same class under § 60 of the bankruptcy act, nor is it a case of fraudulent conveyance under § 67. It is a transfer in consideration of future services, to be reduced if found unreasonable in amount. In *Furth* v. *Stahl*, 205 Pa. St. 439, the opinion is by Mr. Justice Mitchell, and, speaking for the Supreme Court of Pennsylvania, the learned justice, after quoting § 60*d*, says:

"A pledge or payment for a consideration given in the present, or to be given in the future, whether in money or goods or services, is not a preference. The object of prohibiting preferences is to prevent favoritism, whether for secret benefit to himself or other reason, among a debtor's creditors who ought in fairness to stand on the same footing. A transaction by which the debtor parts with something now, in return for something he acquires or is to acquire in the future, is not within the mischief the act was aimed against. Section 60 therefore expressly recognizes this class of transactions; but, as it is capable of abuse, provides for a reëxamination and re-

duction, if necessary, to a reasonable amount by the court on the petition of the trustee or a creditor."

The same statute was before the Court of Appeals for the Sixth Circuit in the case of *Bothe* v. *Pratt,* 130 Fed. Rep. 670. In that case, in speaking of the provisions of § 60*d,* Judge Severens, speaking for the court, said:

"It would rather seem that Congress, engaged, as many signs indicate, in guarding the assets of those in contemplation of bankruptcy, to the end that they might be brought without unnecessary expenditure to the hands of the trustee for distribution to creditors, while it would not deny to the debtor the right to employ and pay for legal assistance in his affairs during that critical period, yet proposed a restraint upon that privilege by requiring that such payment should be reasonable in amount—in short, proposed to apply to the incipient stage of bankruptcy the provident economy which it sought to apply to the administration of the bankrupt estate. It may have been thought that there was the same reason for such restraint at that stage of affairs as subsequently. And it is to be observed that the transaction would not become the subject of revision unless bankruptcy ensued. It put attorneys, solicitors and proctors in no worse position than it did some other classes of those having business with the debtor."

And the court reached the conclusion that there having been no petition of the trustee or any creditor to inquire into the reasonableness of the compensation to be paid attorneys in contemplation of bankruptcy, his claim should be allowed, and the learned judge adds: "As the rights of the parties are governed by the specific provision of the statute relating to the subject, no question of preference by reason of the payments arises."

The bankrupt act itself leaves no doubt as to what is a preference which can be sued for in another jurisdiction, for the section (60) provides:

"A person shall be deemed to have given a preference if, being insolvent, he has, within four months before the filing

of the petition, or after the filing of the petition and before the adjudication, procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class."

To undertake to bring within this definition of a preference, requiring a plenary action for its recovery, the protection given a bankrupt's estate, because of a transfer of property or money to an attorney or counsellor for services to be rendered in contemplation of filing a petition in bankruptcy, is to add to the clearly defined preferences contemplated by the act, and is to include entirely different transactions, not embraced in the statutory definition of a preference as Congress has defined that term.

Section 60d is *sui generis*, and does not contemplate the bringing of plenary suits or the recovery of preferential transfers in another jurisdiction. It recognizes the temptation of a failing debtor to deal too liberally with his property in employing counsel to protect him in view of financial reverses and probable failure. It recognizes the right of such a debtor to have the aid and advice of counsel, and, in contemplation of bankruptcy proceedings which shall strip him of his property, to make provisions for reasonable compensation to his counsel. And in view of the circumstances the act makes provision that the bankruptcy court administering the estate may, if the trustee or any creditor question the transaction, reëxamine it with a view to a determination of its reasonableness.

The section makes no provision for the service of process, and in that view such reasonable notice to the parties affected should be required as is appropriate to the case, and an opportunity should be given them to be heard.

We see no reason why notice of the proceedings under § 60d may not be by mail or otherwise, as the court shall direct, so that an opportunity is given to appear in the court where the

estate is to be administered and contest the reasonableness of the charges in question.

Congress has the right to establish a uniform system of bankruptcy throughout the United States, and having given jurisdiction to a particular District Court to administer and distribute the property, it may in some proper way in such a case as this call upon all interested to appear and assert their rights.

Our attention is called to other cases in which this view has been taken of this section of the bankruptcy act. In *In re Lewin*, 103 Fed. Rep. 850, it was held that a proceeding upon the petition of a trustee under this section is one administrative in its character, and that jurisdiction was not dependent upon service of regular process as in a suit, but is expressly given by statute, and that a notice of the hearing before the referee given by mail to the attorneys in interest a reasonable time before the hearing was sufficient. In speaking of this section Judge Wheeler says:

"This is not a suit such as is mentioned in that clause of section 23, but is an administrative proceeding, of which the bankruptcy court has express jurisdiction, given by this clause 'd' of section 60, if it would not have any by the general grant of jurisdiction over bankrupts and their estates, and of their attorneys in the proceedings, as officers of the court. This specific provision seems rather to have been intended for requiring specific vigilance in this quarter, and for providing for a recovery of any excess from the attorneys, than for any special grant of jurisdiction, which, however, it plainly gives. The course of legal proceedings necessary to be had to affect private rights is well stated by Judge Sanborn in *Rosser's case*, cited. He says, at page 159, Am. Bankr. R. and page 567, 101 Fed. Rep.:

"'Such a course must be appropriate to the case, and just to the party affected. It must give him notice of the charge or claim against him, and an opportunity to be heard respecting the justice of the order or judgment sought. The notice

must be such that he may be advised from it of the nature of the claim against him, and of the relief sought from the court if the claim is sustained.' "

Jurisdiction to reëxamine the transfer to counsel was certainly not conferred upon any state court. When the statute says that if the transfer in contemplation of filing a petition in bankruptcy shall be found to be excessive it may be reduced by "the court," is it possible that it was intended to give the state courts jurisdiction of that much of the administration of the estate, and oust the District Court of the United States, and perhaps delay the settlement of the estate until the state courts of original and appellate jurisdiction should determine the reasonableness of the counsel fee provided for in contemplation of bankruptcy? The answer to this question is obvious, and clearly against a construction which has this effect upon the system of bankruptcy to be administered in the District Courts of the United States established by the act of Congress.

It is true that the state courts under the bankruptcy act as it stood before the amendment of February, 1903, were given jurisdiction to entertain suits to recover preferences to the exclusion of the Federal courts, unless the defendant consented to be sued in the Federal court. *Bardes* v. *The Bank*, 178 U. S. 524. The District Courts had jurisdiction only over proceedings in bankruptcy, as distinct from plenary suits against third persons having possession of transferred property, to be exercised when the District Court had acquired jurisdiction of the bankrupt's property. *Bardes* v. *The Bank*, *supra; White* v. *Schloerb*, 178 U. S. 542; *Bryan* v. *Bernheimer*, 181 U. S. 188; *Whitney* v. *Wenman*, 198 U. S. 539.

Section 60*d* is a part of the original Bankruptcy Act of 1898, and intended by Congress to be a part of a uniform system of bankruptcy to be consistently administered by the courts given jurisdiction. Suppose, then, instead of obtaining the order in the District Court administering the property, the trustee, because he could not get personal service upon the attorneys, had gone to any court within the limits of the State of Arkansas,

state or Federal, upon the theory of a preference, and obtained jurisdiction by valid service of process, it was in the power cf the defendants to end the suit by refusing to consent to the jurisdiction of such court. If suit was begun in the state court of Arkansas that court would have answered, as did the Supreme Court of Missouri in *Swartz* v. *Frank*, 183 Missouri, 439, the bankruptcy act confers no jurisdiction upon a state court to entertain an application of the trustee, or of a creditor to reduce the provision made for counsel, that jurisdiction is given alone to the District Court of the United States administering the property. If the action had been brought in the United States court it would have made the same answer, and, in addition thereto, the jurisdiction of the Circuit or District Court of the United States could have been ousted, prior to the amendment of 1903, by the defendants withholding their consent to the jurisdiction of the Federal court. It is true that by the amendment referred to (the act of February, 1903) concurrent jurisdiction with the state courts is now given to the Federal courts, to suits for the recovery of property under § 60, subdivision *b*, and § 67, subdivision *e*. These last-named sections have reference to suits to recover preferences or fraudulent conveyances. No attempt has been made to change the exercise of jurisdiction under § 60*d*. The transfer to counsel may be wholly sustained; it is certainly valid to the extent that it is reasonable. It is neither a preference nor a fraudulent conveyance, as defined by §§ 60*b* or 67*e* of the act.

It is to be noted that in this case, as the statement of the certificate shows, the District Court rendered no judgment against the defendant for a recovery of the excess, but directed the trustee to bring an action therefor. It simply assumed and exercised the jurisdiction conferred by § 60*d* to determine the amount of the excessive transfer for a counsel fee provided in view of filing a petition in bankruptcy. It may be that this order, though binding upon the parties, cannot be made finally effectual until a judgment is rendered in a jurisdiction where it can be executed.

We reach the conclusion that no reëxamination can be had in this transaction, except in the District Court of the United States administering the estate.

If the opinions of text-writers are to be looked to—and certainly they are entitled to much respect—they have spoken with clear meaning as to the section of the Bankruptcy Act which is the subject-matter now under consideration. In Loveland on Bankruptcy (3d ed.), p. 166, that author says:

"The petition by the trustee to reëxamine a transaction between the bankrupt and his attorney under this section is administrative in character, of which the court of bankruptcy has jurisdiction, irrespective of section 23 of the act."

And in Collier on Bankruptcy, 6th ed., the rule is thus stated (p. 492):

"The practice on proceedings of this character—the attorney being usually an officer of the court—is both simple and summary. Being rarely resorted to, there are no stated rules or forms applicable. The amount paid must appear in schedule B (4) of a voluntary petition. Any notice to the attorney directed by the court is sufficient. The motion may be heard on affidavits or orally. A suit to recover will rarely be necessary; though an order to restore, if not obeyed, is perhaps not now the foundation for a proceeding in contempt."

In Brandenburg on Bankruptcy (3d ed.), § 971, it is said:

"This provision [60*d*] recognizes this fact [the right to employ counsel] and approves the payment by the bankrupt to such attorney of reasonable compensation. The reasonableness of it may be inquired of by the court upon the petition of the trustee or any creditor. This proceeding is administrative in character, in which the jurisdiction of the court is not dependent on the service of process but is expressly given by statute and a notice of hearing therein given by mail a reasonable time before the hearing is sufficient."

And in the latest work on the subject, Remington on Bankruptcy, the rule is thus stated:

"The court has jurisdiction over the attorney to require re-

payment by him. Such jurisdiction may be exercised in the bankruptcy proceedings themselves; and its exercise is not violative of the rules regarding the form for suits against adverse claimants; moreover, it is provided for by a special clause of the bankrupt act itself. Such reëxamination should be had, however, only on due notice to the attorney concerned." Sec. 2099, p. 1298.

The construction which we have given § 60d does not deprive parties of rights secured under the Seventh Amendment of the Constitution to trials by jury in suits at common law where the value in controversy exceeds twenty dollars. This provision of the Constitution extends to rights and remedies peculiarly legal in their nature, and such as it was proper to extend in courts of law by the appropriate modes and proceedings of such courts. *Shields* v. *Thomas*, 18 How. 253–262.

This section in effect confers a special jurisdiction in a bankruptcy proceeding; it is only available when property has been transferred in contemplation of the filing of a petition in bankruptcy. When the affairs of one about to be adjudicated a bankrupt are in that situation, then the act, recognizing the right of the bankrupt to legal services to be rendered, undertakes to prevent the diminution of the estate to be administered and distributed for the benefit of creditors beyond a fair provision for counsel under such circumstances. To the extent that the provision is unreasonable the transfer is not given the effect to separate the property from the bankrupt's estate. As to this excess, the estate comes, within the meaning of the bankruptcy act, within the jurisdiction of the court, and will be ordered to be restored and administered for the benefit of creditors. The order contemplated can only be made after reasonable notice, which the facts certified in this case show was given to the petitioners.

The first and second questions should be answered in the affirmative and the third, as having application to a suit before the order is made in the bankruptcy proceeding, in the negative.

MR. JUSTICE BREWER, with whom MR. JUSTICE PECKHAM and MR. JUSTICE MOODY concurred, dissenting.

I am constrained to dissent in this case, and will state my reasons therefor. The facts are sufficiently given in the opinion of the court. The petitioners were lawyers, living at Hot Springs, Arkansas. They had never been within the State of Colorado, or appeared in the District Court except to file their petition for review, and the only service upon them was made in Arkansas by the delivery of a copy of the application and an order to show cause. The District Court of Colorado, the court in which the bankruptcy proceedings were had, confirming the report of the referee, adjudged that of the money paid to the petitioners employed by the bankrupt in anticipation of proceedings in bankruptcy to render services therein, the sum of $800 was a reasonable compensation for such services, and ordered that the trustee proceed to recover the excess from petitioners. Justification for this order is found in this paragraph of the bankruptcy act:

"SEC. 60*d*. If a debtor shall, directly or indirectly, in contemplation of the filing of a petition by or against him, pay money or transfer property to an attorney and counsellor at law, solicitor in equity, or proctor in admiralty for services to be rendered, the transaction shall be reëxamined by the court on petition of the trustee or any creditor, and shall only be held valid to the extent of a reasonable amount to be determined by the court, and the excess may be recovered by the trustee for the benefit of the estate." 30 Stat. 544, 562.

It is said that this was an administrative and not a judicial proceeding. Three possibilities are suggested by the section. One is that the bankruptcy court, after an examination, may find that there is reason to believe that the attorneys have been paid an excessive sum, and direct the trustee to proceed by action in any court acquiring jurisdiction of the persons of the attorneys to recover what by that court shall be adjudged excessive. This would be a strictly administrative proceeding,

and if that were the conclusion of the court I should have nothing to say in the way of dissent. Another is that the bankruptcy court both adjudicates the amount of the excess—the amount which has been wrongfully paid to the attorneys, and by which, in effect, they have been preferred to the prejudice of creditors of the bankrupt, and also awards process for the collection of that excess. This is not suggested in the opinion of the court, which in effect holds the third possibility, to wit, that the bankruptcy court can adjudicate the amount of the wrongful prepayment, leaving the recovery of that amount to be accomplished by action in a court acquiring jurisdiction of the person in the ordinary way of legal proceedings. Such a construction is inconsistent with the whole history of the jurisdiction of District and Circuit Courts since the foundation of the Government, and is, indeed, against the construction placed on other provisions of the present bankruptcy law.

By Article VI of the Amendments to the Constitution criminal prosecutions are limited to "the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law." By this, so far as criminal cases are concerned, a state locality of jurisdiction is established beyond the power of Congress to disturb. We need not stop to inquire whether Congress can invest the District Court of a single district or State with a jurisdiction in civil cases operative through the whole length and breadth of the country, but has it done so?

The original judiciary act, passed in 1789 (1 Stat. 73, 79), provides, in respect to Circuit Courts, that "no civil suit shall be brought before either of said courts against an inhabitant of the United States by any original process in any other district than that whereof he is an inhabitant, or in which he shall be found at the time of serving the writ." See also with respect to the jurisdiction of District Courts, Rev. Stat. § 563, and with respect to that of Circuit Courts, Rev. Stat. § 629.

Construing the judiciary act of 1789, it was said in *Toland* v. *Sprague*, 12 Pet. 300, 328:

"The judiciary act has divided the United States into judicial districts. Within these districts a Circuit Court is required to be holden. The Circuit Court of each district sits within and for that district, and is bounded by its local limits. Whatever may be the extent of their jurisdiction over the subject-matter of suits, in respect to persons and property, it can only be exercised within the limits of the district. Congress might have authorized civil process from any Circuit Court, to have run into any State of the Union. It has not done so. It has not in terms authorized any original civil process to run into any other district; with the single exception of subpœnas for witnesses, within a limited distance."

While the general conditions of jurisdiction of the Federal courts were in some respects changed by the act of August 13, 1888 (25 Stat. 433), the change does not affect the present question.

Before the District Court of Colorado could in ordinary matters acquire jurisdiction over the person of one not found within its territorial limits, there must be a voluntary appearance of the defendant. He cannot, in an ordinary litigation, be brought into that court by service of process outside the limits of the court's jurisdiction. It has been held that the Circuit Court of one State has no jurisdiction in matters such as the sale of real property beyond the limits of the State. *Boyce's Exrs.* v. *Grundy,* 9 Pet. 275; *Miss. & M. R. R. Co.* v. *Ward,* 2 Black, 485; *Northern Indiana R. R. Co.* v. *Michigan Central R. R. Co.,* 15 How. 233. It is true that when suit is brought to enforce any legal or equitable claim against real or personal property within the district where the suit is brought one who is not an inhabitant of nor found within the district, and does not voluntarily appear thereto, can be brought into court by personal service outside the limits of the district or by publication, as the court may direct, but any adjudication made in that suit, as regards such absent defendant without appearance, affects only his property within the district. Rev. Stat. § 738. So where suit is brought to foreclose a mortgage or trust deed on property

situate in several States the settled practice is for proceedings of foreclosure to be commenced in one court, called the court of primary jurisdiction, and then, in order to establish and maintain judicial control over the property in the other States, obtain ancillary administration in those States; although if the defendant, the owner of the property, is brought into the court of primary jurisdiction that court may act upon him and compel him to do with the property that which ought to be done. But in all these cases either the person or the property is within the territorial jurisdiction of the court.

When an individual, not an inhabitant of the State or district and not found therein, is sought to be charged, by reason only of his indebtedness to a defendant duly served, jurisdiction is not acquired by mere service of notice outside the State, for the fact of indebtedness does not bring him within the jurisdiction of the court. While for some purposes the *situs* of a debt may accompany the creditor, yet that *situs* is not sufficient to give to a court jurisdiction of a personal action against the debtor; that must be maintained in the State where the debtor is found.

Now the recovery of an amount due or of property belonging to an individual or an estate is ordinarily by a common law action. That the claimant is an estate and in the hands of a trustee or receiver does not change the nature of the proceeding. Suppose one of our large railroad properties is in the hands of receivers, can it be tolerated that the amount of the indebtedness by any individual to that estate can be determined absolutely by the court without a jury? If this be so, what becomes of the protection given by Article VII of the Amendments to the Constitution, that "in suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved"? Even if an action has to be brought to obtain the process of execution in the State where the alleged debtor resides, of what significance is it if the amount which is to be recovered is already settled, not by a jury, but by a court acting independently and in a prior pro-

ceeding? If the benefit of a trial by jury can in that way be taken away it will take but little ingenuity on the part of lawmakers to provide for the total destruction of the right of trial by jury, a right which has been considered of priceless benefit in all English-speaking nations, and the protection of which is imbedded in the National as well as state constitutions.

How appropriate in this connection is the language of Mr. Justice Bradley, delivering the opinion of the court in *Boyd* v. *United States*, 116 U. S. 616, 635, where, speaking of an attack upon another constitutional provision, he says:

"Illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure. This can only be obviated by adhering to the rule that constitutional provisions for the security of person and property should be liberally construed. A close and literal construction deprives them of half their efficacy, and leads to gradual depreciation of the right, as if it consisted more in sound than in substance. It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon. Their motto should be *obsta principiis*."

Again, it is said that an excessive prepayment to an attorney does not come within the technical definition of a preference, as stated in § 60:

"SEC. 60*a*. A person shall be deemed to have given a preference if, being insolvent, he has, within four months before the filing of the petition, or after the filing of the petition and before the adjudication, procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class."

An attorney rendering services becomes thereby a creditor of the client, and if he is paid more for the services than they are worth he has received as creditor more than he is entitled to

and comes within the spirit, if not the letter, of § 60, which provides that "a person shall be deemed to have given a preference if, being insolvent, he has, within four months before the filing of the petition . . . made a transfer of any of his property, and the enforcement of such . . . transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class." The idea of bankruptcy is that the bankrupt is unable to pay his debts in full, and if the attorney has received payment in full he has received a greater percentage of his debt than any other creditor.

While § 60d is not in the bankruptcy act of 1867, obviously it was specially inserted in the present act for the purpose of making clear the liability of counsel receiving payment in advance. It is simply a declaration that an excessive prepayment to counsel employed with a view to bankruptcy proceedings is to be considered, so far as the excess is concerned, a preference and recoverable by the trustee in bankruptcy. And unless a contrary intent be clearly manifested the proceeding to recover that preference should be in the same way and by the same tribunals that have jurisdiction of any other proceeding to recover money or property given by way of preference. It would be giving an unreasonable extension to language to make it not simply a declaration of the right to recover, but also a limitation of the tribunal in which the recovery can be had or the amount due determined—a limitation not obtaining in respect to any other preference.

In *In re Waukesha Water Company*, 116 Fed. Rep. 1009, it was held by the District Court of the Eastern District of Wisconsin that "the bankrupt act of 1898 confers no power on a court of bankruptcy to summon before it by a rule to show cause third persons who are not parties to the record and who reside without the district and State, and are there served with the order, and under the general rules of law governing the Federal courts, in the absence of express authority, such service is ineffectual to confer jurisdiction *in personam*."

Again, it is suggested that § 60d provides for proceedings in the bankruptcy court—no vesting of jurisdiction in any other than that court—and it is said there is no provision for a plenary suit to recover the amount of the excessive prepayment and none for a jury. But by the bankrupt act of March 2, 1867, the general jurisdiction over bankruptcy proceedings was vested in the court in which they were commenced, and there was no special provision for ancillary proceedings in the courts of other districts, and yet it was decided that those ancillary proceedings might be held that seemed to be the necessary result of the general jurisdiction conferred and to be in harmony with the design and scope of the act. As said by Mr. Justice Bradley, in *Lathrop, Assignee,* v. *Drake,* 91 U. S. 516, 517, 518:

"Their jurisdiction is confined to their respective districts, it is true; but it extends to all matters and proceedings in bankruptcy without limit. When the act says that they shall have jurisdiction in their respective districts, it means that the jurisdiction is to be exercised in their respective districts. . . . Proceedings ancillary to and in aid of the proceedings in bankruptcy may be necessary in other districts where the principal court cannot exercise jurisdiction; and it may be necessary for the assignee to institute suits in other districts for the recovery of assets of the bankrupt. That the courts of such other districts may exercise jurisdiction in such cases would seem to be the necessary result of the general jurisdiction conferred upon them, and is in harmony with the scope and design of the act."

For these reasons, thus outlined, I must dissent from the opinion and judgment of the court.