In re MICHAELSON, William and Mary, Debtors.

In re BELL, Raymond and Dolores, Debtors.

In re MIXER, Thomas, Debtor.

In re CLINCH, Dennis and Darlene, Debtors.

In re SWORDS, Thomas and Laura, Debtors.

In re DORNEY, Orman and Victoria, Debtors.

In re ROBERTSON, Michael and Theresa, Debtors.

In re DRUMMOND, Duane and Mary, Debtors.

In re FITZPATRICK, Allen, Jr., Debtor.

In re LIVINGSTON, Ricky and LaDena, Debtors.

In re SMITH, Frederick and Sandra, Debtors.

In re HALPIN, Thomas and Debra, Debtors.

In re JACKSON, Marcia, Debtor.

In re HANSEN, Mark, Debtor.

In re PLOTTS, Mark and Laura, Debtors.

In re BORDNER, Patricia, Debtor.

In re WILLMERT, Timothy and Connie, Debtors.

In re BUCK, Rita, Debtor.

In re DAVIS, Jeff and Laurie, Debtors.

In re HARRIS, Penni, Debtor.

In re FITZPATRICK, Michael and Kimberly, Debtors.

Nos. 96–83059, 96–83061, 96–83607, 96–83650 to 96–83653, 97–80003 to 97–80008, 97–80176 to 97–80183.

United States Bankruptcy Court, C.D. Illinois.

July 31, 1997.

Peter Geraci, Chicago, IL, for debtors.

Sabrina M. Petesch, Peoria, IL, for U.S. Trustee.

**OPINION**

WILLIAM V. ALTENBERGER, Chief Judge.

In each of these twenty-one Chapter 7 cases, the matter before the Court is how much should be awarded as attorney fees to the attorney representing the various debtors.

The starting point of the analysis is § 329 and § 330 of the Bankruptcy Code, 11 U.S.C. § 329 and § 330. Section 329, requiring dis-

closure by a debtor's attorney, provides in pertinent part as follows:

§ 329. Debtor's transactions with attorneys.

(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, ... for services rendered or to be rendered in contemplation of or in connection with the case by such attorney ...

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive.

Section 330, setting forth the basis for allowing compensation, provides in pertinent part as follows:

§ 330. Compensation of officers.

(a)(1) After notice to the parties in interest and the United States trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a ... professional person ...

(A) reasonable compensation for actual, necessary services rendered by the attorney ...; and

(B) reimbursement for actual, necessary expenses.

(2) The court may, ... award compensation that is less than the amount of compensation that is requested.

(3)(A) In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity,

importance, and nature of the problem, issue, or task addressed; and

(E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

The 1997 *Collier* pamphlet edition of the Bankruptcy Code contains the following editor's note:

[Ed. Note: Section 224 of the Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, rewrote section 330(a). In doing so, the 1994 Act added two subparagraphs numbered 330(a)(3)(A). It appears that the first reference to paragraph 330(a)(3)(A) is extraneous.]

The legislative history to § 329 provides in part as follows:

Payments to a debtor's attorney provide serious potential for evasion of creditor protection provisions of the bankruptcy laws, and serious potential for overreaching by the debtor's attorney, and should be subject to careful scrutiny.

As to the legislative history of § 329, *Collier* states:

Under prior law, as under the Code, compensation of the attorney for the debtor was scrutinized more closely than the compensation of other officers and professional persons. The rationale for such scrutiny is clearly stated in the House Report that accompanied H.R. 8200. Payments to a debtor's attorney provide "serious potential" for both "evasion of creditor protection provisions of the bankruptcy laws" and "overreaching by the debtor's attorney". Accordingly, section 329 is designed in recognition of "the temptation of a failing debtor to deal too liberally with his property in employing counsel to protect him in view of financial reverses and probable failure".

*3 Collier on Bankruptcy,* ¶ 329. LH, p. 329–29 (15th Rev.Ed.1997).

Bankruptcy Rules 2016 and 2017 implement the provisions of § 329 and § 330 of the Bankruptcy Code. Bankruptcy Rule 2016(b) provides in pertinent part as follows:

*(b) Disclosure of Compensation Paid or Promised to Attorney for Debtor.* Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 15 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code … A supplemental statement shall be filed and transmitted to the United States trustee within 15 days after any payment or agreement not previously disclosed.

Bankruptcy Rule 2017 provides in pertinent part as follows:

*(a) Payment or Transfer to Attorney Before Order for Relief.* [T]he court … may determine whether any payment of money or any transfer of property by the debtor, made directly or indirectly and in contemplation of the filing of a petition under the Code by or against the debtor or before entry of the order for relief in an involuntary case, to an attorney for services rendered or to be rendered is excessive.

*(b) Payment or Transfer to Attorney After Order for Relief.* [T]he court … may determine whether any payment of money or any transfer of property, or any agreement therefor, by the debtor to an attorney after entry of an order for relief in a case under the Code is excessive, …

In *Collier's* discussion of Bankruptcy Rule 2017, it states:

Section 60d [of the Bankruptcy Act] was enacted in recognition of the "the temptation of a failing debtor to deal too liberally with his property in employing counsel to protect him in view of financial reverses and probable failure". *In re Wood,* 210 U.S. 246, 253 [28 S.Ct. 621, 52 L.Ed. 1046] (1908). This rule, like § 60d of the Act and § 329 of the Code, is premised on the need for and appropriateness of judicial scrutiny of arrangements between a debtor and his attorney to protect the creditors of the estate and the debtor against overreaching by an officer of the court who is

in a peculiarly advantageous position to impose on both the creditors and his client. *9 Collier on Bankruptcy,* App.2017[1] p.2017–12.

In determining whether a debtor's attorney's fees are reasonable, the District Court for the Central District of Illinois in *In re Depco, Inc.* No. 91–4103 (April 14, 1992) (J. McDade) directed this Court to apply the twelve factors cited in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974).

In *In the Matter of First Colonial Corp. of America,* 544 F.2d 1291 (5th Cir.1977), the court indicated that the determination of reasonable attorney's fees involves a three-step process. The first step is for the bankruptcy judge to ascertain the nature and extent of the services supplied by the attorney. To this end, the attorney seeking compensation should file a statement which recites the number of hours worked and contains a description of how each of those hours was spent. The second step is to hold an evidentiary hearing if there are disputed issues of fact. The third step is for the Court to determine what is reasonable compensation, briefly explaining its findings and reasons upon which its award is based, including an indication of how each of the twelve factors, cited in *Johnson,* affected its decision. In applying these guidelines, the court in *Colonial,* indicated two additional considerations must be kept in mind. First, the strong policy of the Bankruptcy Code that the estate be administered as efficiently as possible, and second, there are a number of peculiarities of bankruptcy practice.

To meet the requirements of these Code Sections and Rules and the directions of the higher courts, this Court follows a four step process rather than a three step process. That additional step is taken at the beginning of the process to determine if the three steps directed by *Colonial* are necessary. Step one is strictly a review step. It is not an efficient use of an attorney's time to require a detailed fee application in a routine bankruptcy case. Nor is it an efficient use of this Court's time to review every fee disclosure filed.[1] Therefore, step one is for this

1. In 1996 this Court had 3,991 cases filed. So far in 1997 filings are up by 24%.

Court to review all fee disclosures which exceed a certain dollar amount. In 1996 that amount was $800.00 per case, and in early 1997, it was raised to $900.00 per case. Any fee at or under that amount is deemed reasonable. Any fee over that amount is subject to further review.

Contrary to the attorney's assertion, step one does not place a cap on attorney fees. Step one is merely a threshold point, which, if crossed, prompts a further review. Step two (step one in *Colonial*) involves requesting a detailed fee application. Step three (step two in *Colonial*) is for this Court to review the application for reasonableness. If the application appears reasonable, nothing more is done. If there is a question, the fee application is set for hearing, giving the attorney an opportunity to justify the fee being charged. In step four (step three in *Colonial*) this Court determines a reasonable fee applying the *Johnson* factors.

It is in this context that the issue of the reasonableness of the attorney's fees being charged the Debtors in these twenty-one cases came before the Court. In four cases, in response to this Court's request for an itemization of fees, the Debtors' attorney filed a time itemization along with a memorandum in support of them.[2] In nine cases the Debtors' attorney merely filed a memorandum in support of his original fee disclosure without filing the itemization requested by this Court.[3] In one case, in addition to the memorandum, the Debtors' attorney included the affidavit of the Debtors that they

were willing to pay the disclosed fees.[4] In six cases the Debtors' attorney filed the memorandum and a statement of basis of fees, without the requested itemization.[5] In one case the Debtor's attorney made similar filings to those in the six cases just described, with the statement of basis of fees being titled as a response.[6] A hearing was held in these twenty-one cases.

As these twenty-one cases were proceeding to hearing, eleven more cases were filed by the same Debtors' attorney. In some of these cases the Debtors' attorney filed a pleading entitled "Time Itemization and Statement of Services Provided" or "Statement of Basis of Fees", which did not itemize the services provided and no additional hearings were scheduled.[7] In seven of these cases, the Debtors' attorney also included the affidavit of the Debtors that they were willing to pay the disclosed fees.[8]

After the hearing, the attorney filed fifteen additional cases where the disclosed fee exceeded $900.00. Some of the petitions were accompanied by Debtor's affidavits attesting to the voluntariness of the payment of fees. In each of these cases, the Court requested detailed fee applications, which were not filed.[9]

Returning to step two of the process (step one in *Colonial*), in four of the cases before this Court, where a hearing was held, the original application sets forth in somewhat detailed fashion, the last name of each attorney or clerk providing services, their re-

---

2. *In re Michaelson,* No. 96–83059; *In re Bell,* No. 967–83061; *In re Mixer,* No. 96–83607; *In re Dorney,* No. 96–83652.

3. *In re Clinch,* No. 96–83650; *In re Swords,* No. 96–83651; *In re Robertson,* No. 96–83653; *In re Hansen,* No. 97–80176; *In re Plotts,* No. 97–80177; *In re Bordner,* No. 97–80178; *In re Willmert,* No. 97–80179; *In re Buck,* No. 97–80180; *In re Davis,* No. 97–80181.

4. *In re Fitzpatrick,* No. 97–80183.

5. *In re Drummond,* No. 97–80003; *In re Fitzpatrick,* No. 97–80004; *In re Livingston,* No. 97–80005; *In re Smith,* No. 97–80006; *In re Halpin,* No. 97–80007; *In re Jackson,* No. 97–80008.

6. *In re Harris,* No. 97–80182.

7. *In re Barnes,* No. 97–81439; *In re Powell,* No. 97–81442; *In re Alonso,* No. 97–81125; *In re Smith,* No. 97–80754.

8. *In re Barna,* No. 97–80753; *In re Ross,* No. 97–80751; *In re Nance,* No. 97–81437; *In re Fishel,* No. 97–81441; *In re Franklin,* No. 97–81126; *In re Sallee,* No. 97–80502; *In re Michaelson,* No. 97–80499.

9. *In re Gerber,* No. 97–82475; *In re Stahl,* No. 97–82476; *In re Smith,* No. 97–82478; *In re Romans,* No. 97–82443; *In re Pawson,* No. 97–82444; *In re Hardin,* No. 97–82445; *In re Johnson,* No. 97–82446; *In re Wheeler,* No. 97–82447; *In re Haneghan,* No. 97–82448; *In re Graves,* 97–81961; *In re Jacobs,* 97–81962; *In re Gibbs,* 97–81963; *In re Holloway,* 97–81967; *In re McMillan,* 97–81969; *In re Burlingame,* 97–81970.

quested hourly rate, the total number of hours of services performed, a specific listing of dates, itemization and time of all services performed, and an itemization of costs. In the other seventeen cases where a hearing was held, and the eleven cases filed while the previous twenty-one were proceeding to hearing, no such information is supplied.

In twenty-one of the cases, a hearing was held and all interested parties were given an opportunity to present whatever evidence and arguments they wished to make. The Debtors' attorney presented no evidence, but briefly argued his position that this Court should not review his fees for reasonableness.

By this Opinion, this Court will move to step four of the process (step three in *Colonial*) and determine a reasonable fee, applying the twelve *Johnson* factors and addressing the other considerations raised by the various documents filed by the attorney.

■ As to the four cases where an itemization was filed, there are two reasons why the requested fees should be reduced. First, they include clerk's time. Clerk's time is considered to be part of an attorney's overhead and is to be recovered through his fee. Second, the attorneys are merely identified by their last names, there is no indication in the applications, or proof presented at the hearing as to their experience and qualifications, nor was there any indication in the

applications, or proof presented at the hearing as to a comparable hourly rate for attorneys in the community with comparable experience and comparable qualifications, whether practicing in bankruptcy or other fields.

■ In cases where there is no proof to substantiate the claimed hourly rate, this Court, based on what it perceived was being charged in the community, had established at the time of the filing of these four cases the following as allowable hourly rates:

$175.00 per hour for senior partners.

$145.00 per hour for junior partners.

$120.00 per hour for senior associates.

$95.00 per hour for junior associates.

Unfortunately, due to the lack of proof, this Court does not know how to classify the various, and sometimes numerous attorneys, in the attorney's office, who worked on each case. However, they appear to be younger, less experienced attorneys. So, this Court would classify them as senior associates and award compensation at the rate of $120.00 per hour, which is comparable to what other bankruptcy and non-bankruptcy attorneys of comparable age and experience charge.[10]

In these four cases, making adjustments for non-chargeable clerk's time, and for reducing the hourly rates, the following fees should be allowed as reasonable:

| CASE | FEE ALLOWED | AMOUNT TO BE RETURNED TO DEBTOR |
|---|---|---|
| MICHAELSON | $648.00 | $347.00 |
| BELL | $888.00 | $ 7.00 |
| MIXER | $545.00 | $305.00 |
| DORNEY | $562.00 | $333.00 |

■ As to the remaining seventeen cases where a hearing was conducted, this Court cannot make a similar determination, as there is no itemization of time, nor any hourly rate stated. However, the Debtors in each of these cases did receive some benefits from the attorney's efforts in filing their bankruptcy cases. The best method this Court is aware of to quantify the value of those bene-

fits is to take an average based on the four cases alluded to above as they are similar. That average is $661.00. Therefore, in each of these other seventeen cases where a hearing was held the fee should be $661.00, with any excess being returned to the Debtors.

Applying the twelve factors set forth in *Johnson*, does not change the result in those twenty-one cases:

**10.** This Court would also note that there are many other attorneys, who appear before it, who

are older and more experienced and charge that amount or less.

**1. The time and labor required.** Time and labor was expended. There is no indication it was not as set forth in the itemization filed in four of the cases and that it was required. In the other seventeen cases where no itemization was filed, as they are similar in nature to the four cases with an itemization, this Court would conclude the nature and amount of the work was the same and was required.

**2. The novelty and difficulty of the questions.** There were no novel or difficult legal issues presented in any of the twenty-one cases. The work was routine involving the preparation of petitions and schedules in uncomplicated consumer cases, with some reaffirmation agreements. Not a single contested or adversary matter was filed. In only one case, *In re Willmert*, No. 97–80179, was there a motion to lift the stay filed by the mortgagee and an agreed order was entered.

**3. The skill required to perform the legal services properly.** No great skill is required to prepare and file schedules, negotiate reaffirmation agreements, or handle telephone calls and inquiries generated by a bankruptcy filing. The attorney argues that his firm is unique and that his fees cannot be compared to other Central Illinois bankruptcy attorneys, because the services that he offers are far better than those offered by them. He suggests that if his clients are willing to pay a premium for those services, this Court should not interfere. As just indicated, there is nothing unique about the services provided, nor is there any proof that the attorney provided it in a manner better than provided by local attorneys. From this Court's observations of all attorneys appearing before it, the attorney's statement that he provides unique services far better than other attorneys is not only self-serving, but incorrect.

**4. The preclusion of other employment by the attorney due to acceptance of the case.** The inquiry associated with this factor is whether, in a time context, the acceptance of the representation of the Debtors involved such an intense effort as to preclude the availability of the attorney to represent other clients. Representation of one client always has some preclusionary effect on other clients. However, these cases were straightforward, and no evidence was presented to indicate that the representation of the Debtors was so intense the attorney had no time for other clients.

**5. The customary fee.** As previously noted these cases involved relatively small and simple consumer cases devoid of any novel or complex issues, or any extensive litigation. In reviewing other fee disclosures for similar types of cases, this Court has observed a range as low as $195.00, some in the $300.00 range, and others at the $800.00 level. A fee in the cases now before this Court of $661.00 falls within that range.

**6. Whether the fee is fixed or contingent.** This factor will be discussed later in this Opinion.

**7. Time limitations imposed by the client or the circumstances.** This Court is not aware of any time limitations imposed by the Debtors or the circumstances of the cases. There is always a time consideration associated with any bankruptcy filing. But no evidence was presented to establish any unusual time constraints were present which would justify a fee based on this factor.

**8. The amount involved and the results obtained.** As previously noted, these are small uncomplicated Chapter 7 cases with no substantive or significant contested or adversary matters.

**9. The experience, reputation and ability of the attorney.** Neither the fee applications, nor the presentation at the hearing, set forth any specifics which this Court could use to determine the communities' view of the attorneys' experience, reputation and ability. Nor were any specifics presented of any scholarly publications written by them, or their participation in activities such as Continuing Legal Education seminars that would indicate they have been recognized by their peers as having exceptional experience, reputation or ability in the bankruptcy area, similar to several other attorneys who concentrate their practice in bankruptcy and regularly appear before this Court. Absent any evidence, an alternative source of information is the Martindale–Hubbell Law Di-

rectory rating. The attorney's rating is not listed. The other attorneys in his office were not listed.[11]

**10. The undesirability of the case.** These Chapter 7 cases are routine in nature. There was nothing associated with them which made them inherently undesirable.

**11. The nature and length of the professional relationship with the client.** The attorney advertises as specializing in bankruptcy law. There was no proof the Debtors use the attorney over an extended period or for other matters.

**12. Awards in similar cases.** As previously noted, the fees allowed the attorney are within the range of comparable fees in similar Chapter 7 cases.

Before leaving these twenty-one cases, this Court will follow the dictates of *Colonial* and consider any peculiarities associated with these cases. The Debtors' attorney has raised a variety of factors, which he contends should be considered in setting his fee. This Court will address the major ones, but not all of them.

At the hearing the Debtors' attorney argued his fees should not be reviewed for reasonableness. If this Court had such a policy for him, it would have to have it for all attorneys appearing before it. Such a total abdication of the dictates of the Bankruptcy Code is completely unwarranted.

In the first four cases, the attorney applied an hourly rate of $185.00. The attorney states that although an hourly rate is quoted by the firm, bankruptcy clients are not charged hourly fees. Prior to signing a contract, the clients are quoted a flat fee and that fee is not increased. There are several problems with this approach. First, § 330(a)(3)(B) requires that "rates charged for such services" be considered in determining reasonableness. Second, even if a flat rate is charged, a reference to an hourly rate can help to determine if a flat rate ends up being reasonable when compared to what non-bankruptcy practitioners are charging utilizing hourly rates. Third, the attorney has not explained how the flat rate was determined. Fourth, there seems to be no consistency or rhyme or reason as to what the flat fee is. It seems to vary for similar cases.

The attorney offers an explanation in the pleading entitled "Motion to Consolidate for Purposes of this Motion and Response to 'Notice regarding disclosure of attorneys' fee' ". (*In re Clinch*, No 96–83650, Jan. 8, 1997, Doc. # 7–1). This explanation is also a part of some of the other documents he has filed, i.e., the "Time Itemization and Statement of Services Provided". The attorney has identified several factors, which account for the variations in fees charged different Debtors by his firm. Among these factors are the type of assets; the amount of the debt and the number and identity of the creditors; the difficulty in dealing with the client; the income and expenses of the client; the cost of comparable services; and the length of relationship with the client and the likelihood of obtaining referrals. While a number of these factors elude an independent review by the Court, a review of the cases before the Court fails to disclose any rhyme or reason as to the flat fee charged. The fee varies for similar cases, both margin-

---

**11.** In one of the cases a fee contract is filed, which at the top lists several associates, some of whom worked on the four cases where itemized statements were filed. While not listed in Mar-tindale–Hubbell, they were listed in Sullivan's Law Directory. The following information was listed for those attorneys whose names appear on the itemized fee statements:

| Name | Date of Birth | Date Admitted to Bar |
| --- | --- | --- |
| Mario M. Arreola | 1958 | 1988 |
| Kevin W. Chern | 1968 | 1993 |
| Richard K. Gustafson II | 1968 | 1993 |
| Steven J. Diamond | 1965 | 1993 |
| Richard W. Chang | 1969 | 1994 |
| Rick G. Melendez | 1967 | 1996 |
| Kathrine M. McGrath | 1954 | 1994 |

ally and significantly. While a substantial difference might reflect consideration of the factors identified by the attorney, slight differences do not, and cast doubt upon the attorney's explanation. For instance in *In re McMillan,* No. 97–81969, the fee charged is $1,095 and in both *In re Gibbs,* Case No. 97–81963 and *In re Jacobs,* No. 97–80962, it is $1,100.00, a difference of $5.00. In *In re Barna,* No. 97–80753, the Debtor paid the attorney a fee of $1,495.00. In that case the Debtor entered into two reaffirmation agreements, one on a mobile home and another on an automobile. A second vehicle was surrendered. The Debtors also paid the attorney $1,495.00 in *In re Powell,* No. 97–81442. In that case, the statement of intention indicated the Debtors intended to reaffirm one debt, but no agreement has yet been filed. Though the Trustee has scheduled an auction sale of one parcel of real estate, the Debtors have not objected to the sale or otherwise participated in the proceedings. In other respects, there appears to be no difference in these two cases, where a higher fee was charged, than in the remaining cases, where fees from $895 to $1,100 were charged.

In some of the cases the Debtors have filed affidavits to the effect that they are willing to pay the amount charged and the attorney argues the market should control. Again, there are several problems with this approach. First, in our economic system market prices and client satisfaction are important factors. However, in bankruptcy they are not unfettered. Congress has seen fit to restrict or temper the market's role in determining attorney fees in a bankruptcy case. Section 330 sets forth a statutory basis for fees, and requires fees to be reasonable. Market concepts are incorporated into § 330 in two ways. The factors listed in § 330 are not exclusive, leaving room for market considerations. Furthermore, § 330 brings market consideration into the determination by including a reference to customary compensation charged by comparably skilled non-bankruptcy attorneys. But, there was no proof presented at the hearing to substantiate the contention that the market has established customary fees for comparably skilled non-bankruptcy attorneys that are

contrary to those being awarded by this Court.

■ Second, a major reason for § 330 is to prevent debtors from hiding assets through payments to attorneys. While there is absolutely no indication that is occurring in any of these cases, a debtor engaged in such activity would not hesitate to sign such an affidavit to conceal the activity.

Third, parts of the affidavit are clearly beyond the scope of most laymen's knowledge about attorney fees. This Court seriously doubts many laymen would have formed an opinion that this Court's policy "results in driving smart lawyers out of the debtor bankruptcy field". It is an obvious self-serving statement inserted by the attorney.

This argument was rejected by the District Court in *Geraci v. Hopper,* 208 B.R. 907, 909 (C.D.Ill.1997), where the court stated:

[The attorney] argues that the market and not the judge should set the fees of debtors' attorneys in a Chapter 7 case and relies on *Matter of Continental Illinois Securities Litigation,* 962 F.2d 566 (7th Cir.1992) as controlling this appeal. The reliance is misplaced. *Continental* is about as far removed from these no asset Chapter 7 cases as can be imagined. It was complex litigation involving a 45 million dollar settlement after years of preparation. But *Continental* was commercial litigation and the Seventh Circuit made a very helpful suggestion that the bankruptcy judge apparently applied here. *Continental* suggests that finding "testimony or statistics concerning the fee arrangements in commercial litigation comparable to the present suit" would be a proper basis for determining a reasonable fee. 962 F.2d at 572–73. That is exactly what Judge Fines did in these cases. He reviewed the fees charged in similar cases by competent attorneys, experienced in bankruptcy matters in the Central District, and found that the average fee for a no asset, chapter 7 case was $550.

The attorney also contends that he has been singled out for special treatment in an attempt to hold down fees. The $800.00, now

$900.00, figure is strictly a review standard. Once subject to review, the requested fee can be reduced if excessive or allowed where the attorneys show a higher fee is justified, which routinely occurs. The attorney is treated no differently than any other attorney who appears before this Court. The only thing different about this Court's treatment of the attorney is that he has seen fit to challenge the review procedure, which works to set reasonable fees for bankruptcy cases, and in the process the attorney has conjured up the misconception that he is being singled out.

The last issue before the Court is whether to schedule additional hearings on fees in cases filed after the twenty-one cases were set for hearing. While this Court is aware that hearings are key to our judicial system, it does not believe that scheduling additional hearings will help to resolve the matter of determining reasonable attorney fees for the attorney in these other cases. In the eleven cases filed while a hearing was pending on the twenty-one cases and in the fifteen cases filed after the hearing, but before this Opinion was issued, the attorney was directed to file a fee itemization and did not do so. All that was filed was documents, argumentative in nature, comparable to what was filed in seventeen of the twenty-one cases where there was a hearing. Nothing new has been filed in these later cases. The issues raised by these cases have been litigated before three different Bankruptcy Judges in the Central District of Illinois, a mandamus action filed in the District Court for the Central District of Illinois, and several appeals to the District Court and the Seventh Circuit Court of Appeals.

Therefore, with one adjustment, the fees for these later cases should be the same. The adjustment is that effective February 1, 1997, this Court raised the hourly rates it allows, absent proof of an applicable hourly rate from $175.00 to $200.00 an hour for senior partners, and from $120.00 to $130.00 an hour for senior associates. In those cases filed before February 1, 1997, the fee should be $661.00, and in those cases filed after that date, the fee should be $714.00.[12]

In conclusion, although given the opportunity at the hearing, rather than giving this Court concrete information, such as an hourly rate and itemization of services provided as required by *Colonial* and *Johnson* from which it could determine a reasonable fee, the attorney has resorted to asking this Court to abdicate its responsibilities under § 330 and give him special treatment, and in the process makes a mountain out of a molehill by alleging he has been singled out for unfair treatment.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

---

12. This fee has been computed by taking the average time spent by the senior partner in the above four cases, or .125 hours, at the new rate of $200.00 per hour, for an average fee per case of $25.00. The remaining fee is computed by taking the average time spent by senior associates in the above four cases, or 5.3 hours, at the new rate of $130.00 per hour, for an average fee per case of $689.00. Adding those two amounts together, the fee allowed is $714.00.