### In re ROLNICK et al.

(Circuit Court of Appeals, Second Circuit. December 3, 1923.)

No. 80.

1. **Bankruptcy ⬅170—Payment by bankrupts to attorney for future services may be recovered.**

Under Bankruptcy Act, §§ 60d, 64b (Comp. St. §§ 9644, 9648), an attorney can be required to pay to the trustee money paid to him by bankrupts on the eve of their bankruptcy for services to be rendered in representing and protecting their interests in any proceedings which thereafter arise.

2. **Bankruptcy ⬅170—Conditions under which bankrupt may pay attorney for future services stated.**

Under Bankruptcy Act, § 60d (Comp. St. § 9644), payment by bankrupt to his attorney for services to be rendered is not a preference or a fraudulent conveyance, but the payment must be made for services germane to the aims of the Bankruptcy Act, and rendered prior to the institution of bankruptcy proceedings.

3. **Bankruptcy ⬅446—Clear case necessary to change attorney's allowance.**

The Circuit Court of Appeals will not change the amount of an attorney's allowance for services in a bankruptcy proceeding, unless a clear case of error is established.

Petition to Revise Order of the District Court of the United States for the Eastern District of New York.

In the matter of Joseph R. Rolnick and Mitchell H. Rolnick, individually and as copartners trading as Rolnick Bros., bankrupt. Petition by Louis Dorfman to revise an order of the District Court (291 Fed. 766) requiring petitioner to refund payments made by bankrupts. Order affirmed.

R. M. S. Putnam and A. Joseph Geist, both of New York City, for petitioner.

Shaine & Weinrib, of New York City, for respondent.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

ROGERS, Circuit Judge. It appears that on October 27, 1922, an involuntary petition in bankruptcy was filed in the District Court against the bankrupts, and such proceedings were thereafter had that an order was duly entered adjudicating them to be bankrupts, and subsequently a trustee was elected by the creditors and duly qualified.

Prior to the filing of the petition in involuntary bankruptcy, the bankrupts, being at the time under apprehension of bankruptcy and fearing the institution of various civil and criminal proceedings with

respect to their insolvent condition, called upon Louis Dorfman, the petitioner herein, and retained him to represent them in all proceedings, of whatever nature, that might arise out of the circumstances in which they might find themselves, and they paid to him, prior to the filing of the petition in involuntary bankruptcy above referred to, the sum of $2,850 as a fee for representing them and protecting their interests in any proceedings which might thereafter arise.

. Thereafter, the petition in involuntary bankruptcy having been filed, the bankrupts were charged with criminal offenses in connection with the alleged concealment of their property and defrauding their creditors. They were arrested and held in bail, and the petitioner, Dorfman, rendered to the bankrupts professional services, both in the bankruptcy proceedings and in the criminal proceedings above mentioned. At the time the petitioner filed his petition to revise, the criminal proceedings were still pending, and the petitioner states that he expects that he will be called upon under his retainer to defend the bankrupts after an indictment.

It appears, also, that on April 3, 1923, after due notice of the motion had been given, the referee in bankruptcy made an order fixing the petitioner's fee at $300 for his services in the bankruptcy proceedings proper, and requiring him to pay over to the trustee the sum of $2,550, that being the balance of the sum of $2,850 which the bankrupts originally placed in his hands to pay him for the professional services which it seemed to them he might be called upon to render. This order the petitioner asked the District Court to review. That court, on June 15, 1923, affirming the order of the referee, rendered a memorandum opinion, from which we quote as follows:

"When the bankrupt pays money in return for an agreement to render legal services to him in future, he thereby acquires something of value in return for the money which he has paid, namely, the right to receive the services in question, and, in the event that they are refused, the right to sue and recover for breach of contract. It will not be suggested, I think, that on the eve of bankruptcy a prospective bankrupt could pay money to a physician and in return therefor receive an agreement whereby professional medical services would be performed in future, and it certainly cannot be contended that a bankrupt could pay over to a dealer in merchandise on the eve of bankruptcy a sum of money and receive therefor an agreement (and acquiring the rights thereof), whereby at some future time merchandise was to be delivered to him. In other words, the estate of a bankrupt cannot be diverted by any arrangement which will permit the bankrupt to benefit after his adjudication in a manner which would have been impossible, had he not diverted assets of the estate prior to the petition. Such an agreement seems to me to be so unreasonable that it cannot have judicial sanction, and the order of the referee is therefore affirmed."

Thereafter, and on June 21, 1923, the District Judge filed a supplemental opinion, in which he said:

"Since the foregoing memorandum was filed the attorney in question has advised me that he desires to review this determination. It is obvious, therefore, that I was mistaken in my understanding with reference to his attitude. It is apparent that he desires to hold as much of this estate as possible, and it is quite obvious that the practice which he has attempted to follow will encourage practitioners who have no moral scruples to attempt to secure substantial sums on the eve of bankruptcy many times, upon the mere pretext that professional services are to be thereafter rendered in other matters in re-

turn. It is to be regretted that the desire of the court to pay proper credit to a praiseworthy attitude on the part of an attorney has been followed by a course of procedure which indicates anything but a willingness to comply with the direction of the court."

[1] The order of the District Court which affirmed the referee appears to have been filed on June 22, 1923, and the petition to revise was dated June 28, 1923. It is therefore properly before us. The District Judge, in his opinion, stated that he had not been referred to any authority directly in point, and said that he was constrained on principle to find that no such agreement as that herein involved was contemplated by the Bankruptcy Act. We think that the conclusion he reached was sound as a matter of principle, and entirely justified by the reasons he gave. But the question involved is not without support in the decisions, as will appear as we proceed.

The Bankruptcy Act contains two actions which deal with the subject of attorney's fees. Section 60d (Comp. St. § 9644) provides as follows:

"If a debtor shall, directly or indirectly, in contemplation of the filing of a petition by or against him, pay money or transfer property to an attorney and counselor at law, solicitor in equity, or proctor in admiralty for services to be rendered, the transaction shall be re-examined by the court on petition of the trustee or any creditor and shall only be held valid to the extent of a reasonable amount to be determined by the court, and the excess may be recovered by the trustee for the benefit of the estate."

Section 64b (Comp. St. § 9648) provides:

"The debts to have priority, except as herein provided, and to be paid in full out of bankrupt estates, and the order of payment shall be: * * * (3) The costs of administration, including the fees and mileage payable to witnesses as now or hereafter provided by the laws of the United States, and one reasonable attorney's fee, for the professional services actually rendered, irrespective of the number of attorneys employed, to the petitioning creditors in involuntary cases, to the bankrupt in involuntary cases while performing the duties herein prescribed, and to the bankrupt in voluntary cases, as the court may allow."

The first of these sections deals with a payment made by the bankrupt from his own estate for services to be rendered to him. The other section deals with an allowance to an attorney who has performed services, the allowance coming from the estate in bankruptcy.

[2] There can be no doubt that under section 60d a payment by the bankrupt to his attorney is not a preference, nor a fraudulent conveyance, as defined by Congress, if the payment is made for services to be rendered in contemplation of the filing of a petition in bankruptcy. The act recognizes the right of the debtor to have the aid and advice of counsel, and to make provisions for a reasonable compensation to his counsel for services which are germane to the aims of the Bankruptcy Act (Comp. St. §§ 9585–9656), subject, however, to the right of the court, if the trustee or any creditor questions the transactions, to reexamine it, with a view of determining the reasonableness of the amount paid. In re Wood, 210 U. S. 246, 28 Sup. Ct. 621, 52 L. Ed. 1046. But the services to be rendered, we think, must be germane to the aims of the Bankruptcy Act, and they must be rendered prior to the institution of the bankruptcy proceedings to make section 60d ap-

plicable. In re Habegger, 139 Fed. 623, 630, 631, 71 C. C. A. 607, 3 Ann. Cas. 276; Pratt v. Bothe, 130 Fed. 670, 675, 65 C. C. A. 48. And see In re Mayer (D. C.) 101 Fed. 695, 697.

In the instant case the services for which the petitioner claims the right to retain his compensation out of the sum of $2,850 paid over by the bankrupt in the manner heretofore stated were services rendered or to be rendered after the filing of the petition in bankruptcy, and services not shown to be beneficial to the estate, and not such as are contemplated by the terms of the Bankruptcy Act.

[3] And as to the allowance of $300, made by the referee and confirmed by the District Judge, for the services performed by the attorney in the bankruptcy proceedings, it is noted that the referee found that those services were really obstructive rather than of assistance to the trustee. In making the allowance he did, he explained that he made it with the understanding that the attorney for the bankrupt "may apply before the closing of the estate for additional compensation for those services which are rendered on behalf of the bankrupt, which are necessary services, and which are in aid of the orderly administration of this estate."

All that we need to say upon this aspect of the case is to repeat what we said in the Matter of Iron Clad Mfg. Co., 215 Fed. 877, 132 C. C. A. 11. We will not change the amount of an attorney's allowance, unless a clear case of error is established, and it has not been established to our satisfaction in the case now before us.

Order affirmed.