## In re BUCHANAN et al.

## IRVING TRUST CO. v. MACKEY & MARCHISIO et al.

### No. 273.

Circuit Court of Appeals, Second Circuit.

July 17, 1933.

Mackey, Marchisio, Herrlich & Breen, of New York City (Richard J. Mackey, of New York City, of counsel), for appellants.

Sternberg & Rosen, of New York City (Gustave J. Rosen, of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

## AUGUSTUS N. HAND, Circuit Judge.

On February 9, 1931, Walter L. Buchanan retained the respondents because of a supposed defalcation in the firm of Buchanan & Co. stated to be due to the acts of Omdal, one of the partners. The respondents asked for a retainer of $1,000, of which $500 was paid on February 9, and $500 on February 13. Various legal services were performed by the respondents for this retainer prior to February 21, including visits to the office of the district attorney of New York county for the purpose of lodging a complaint against Omdal, procuring the arrest of Omdal, arranging for and attending at the Magistrate's Court in criminal proceedings instituted against Omdal.

On February 21, respondents informed Buchanan that the time consumed was such that they could not proceed without an additional payment of $2,500, which Buchanan on that date made by a check that was returned unpaid because of insufficient funds. Buchanan, however, made the arrangement good by paying $2,500 in cash on February 26.

Between February 21, when the payment of $1,000 for fees had become exhausted, and March 9, the respondents rendered services including a draft of a proposed composition agreement with the creditors of Buchanan & Co., attendance at the Attorney General's office with reference to a proceeding by him under the Martin Act (General Business Law [Consol. Laws, c. 20] § 352 et seq.), attendance at a Special Term of the Supreme Court and at examinations under the Martin Act, likewise attendance at the Magistrate's Court where the hearing of the charges against Omdal was had and bail was fixed. These services between February 21 and March 9 appear to have occupied about sixty hours of respondents' time.

On March 9, 1931, an involuntary petition in bankruptcy was filed against Buchanan individually and his copartnership, and in due course they were adjudicated bankrupts and the Irving Trust Company was appointed trustee. Thereafter the trustee filed a petition with the referee in bankruptcy under section 60d of the Bankruptcy Act (11 US CA § 96(d) for the re-examination of the payments made to the respondents for their services. The referee held that the retainers were not given for services in a bankruptcy proceeding and that no such proceeding was contemplated when the payments were made. He accordingly denied the petition. Upon a petition to review his decision, the District Court reversed the referee and held: (1) That bankruptcy was in contemplation when the payment of $2,500 was made; (2) that under such circumstances the bankruptcy court had summary jurisdiction to re-examine the payment; and (3) that the services rendered by the respondents between February 21 and March 9, when the petition in bankruptcy was filed, were worth only $300. An order was thereupon made by the District Judge directing the respondents to repay to the trustee in bankruptcy $2,200, and from this order the present appeal is taken by the respondents.

The respondents contend that: (1) The fee was not paid in contemplation of bankruptcy; (2) the District Court had no jurisdiction to review the fee in a summary proceeding because the services rendered were

418

not germane to bankruptcy; (3) the respondents had the constitutional right of a trial by jury; (3) the value of their services between February 21 and March 9 was in any event greater than $300.

Section 60d of the Bankruptcy Act provides that:

"If a debtor shall, directly or indirectly, in contemplation of the filing of a petition by or against him, pay money or transfer property to an attorney and counselor at law, solicitor in equity, or proctor in admiralty for services to be rendered, the transaction shall be reexamined by the court on petition of the trustee or any creditor and shall only be held valid to the extent of a reasonable amount to be determined by the court, and the excess may be recovered by the trustee for the benefit of the estate."

We feel no doubt that on February 21, 1931, at the latest, the filing of a petition in bankruptcy was in contemplation. Respondents' schedule of services annexed to their answer contains the following entry on that date:

"Conference with Mr. Buchanan * * * relative to draft of composition agreement to be worked out for signature by the various customers. Mr. Walter Buchanan stated that in his opinion 90 or 95% of his customers were willing to work along with him and endeavor to relieve him of the unfortunate situation created by the embezzlement of Omdal."

There had been a meeting of creditors on February 17, at which the respondent Mackey was present. He testified that at that meeting Buchanan "suggested making a settlement of 15 per cent. and having Mrs. Buchanan transfer her residence in Brooklyn because of * * * Mr. Omdal's embezzlement." Even this settlement at 15 per cent. "was to be * * * in notes" payable over a period of four years. Later in his testimony, Mackey said that the proposal of a 15 per cent. composition did not come up until some time after that meeting. But he admitted that on the 21st of February he had discussed with Buchanan this composition of 15 per cent. plus a stock interest in a new company to be organized for the purpose of recouping losses by operating a trading account, and that on February 23 he had prepared the composition agreement. In view of the foregoing, it seems plain that when Mackey arranged, on February 21, for the retainer of $2,500, and received the worthless check, he knew that bankruptcy was imminent. At that time the firm was hopelessly insolvent, whether because of an embez-

zlement by Omdal, or for some other reason. The proof that the payment was made in contemplation of bankruptcy is quite as strong as was the proof in Conrad, Rubin & Lesser v. Pender, Trustee, 53 S. Ct. 703, 77 L. Ed. ——, decided by the Supreme Court on May 29, 1933. We hold that the engagement to pay the retainer was made, and the fee of $2,500 was actually paid, in contemplation of bankruptcy.

The second point raised by the respondents is that summary jurisdiction to review the fee did not exist because the services rendered were not "germane to bankruptcy." This contention is founded upon certain decisions such as In re Rolnick, 294 F. 817 (C. C. A. 2), which limited the fees which may be re-examined to payments for services "germane to bankruptcy." But in Conrad, Rubin & Lesser v. Pender, Trustee, supra, the Supreme Court settled this question once for all and definitely held that, where a payment to an attorney at law is made in contemplation of bankruptcy the reasonableness of his compensation may be re-examined whatever be the nature of his services. This decision is not only binding upon us but it specifically affirmed our own decision reported sub nomine In re David Bell Scarves, 61 F. (2d) 771. We accordingly hold that the respondents were entitled to a reasonable fee for any services performed when bankruptcy was in contemplation and that under section 60d the court might properly re-examine the fee paid and determine what compensation was reasonable for all the services between February 21 and the date of the filing of the petition on March 9.

It may be argued that compensation cannot be allowed for services rendered between February 21, when the retainer of $2,500 was arranged, and February 26, when it was actually paid, because such an allowance would be a payment of an antecedent debt and would effect a preference not warranted by section 60d. But though section 60d provides for re-examination of payments to an attorney "for services to be rendered," we said in Re Falk, 30 F. (2d) 607, at page 609, that "it can make no difference whether the transfer was made at or after the professional engagement was entered into," and added that it is "quite immaterial * * * whether the payment was made at the beginning of the service or later, providing bankruptcy was in contemplation during the time when all the services compensated for were rendered, and the payment was for services which were to be rendered when the professional engage-

ment was entered upon." Pratt v. Bothe, 130 F. 670 (C. C. A. 6); In re Klein-Moffett Co. (D. C.) 27 F.(2d) 444; In re Cummins (D. C.) 196 F. 224. The words, "for services to be rendered," in section 60d have in practice been construed as covering all services "to be rendered" in contemplation of the filing of a petition in bankruptcy and not as including only services "to be rendered" after the payment or transfer sought to be re-examined has been made.

Appellants' third contention is that re-examination of their fee under section 60d deprives them of trial by jury, a right guaranteed by Amendment 7 of the Federal Constitution. But, in Matter of Wood & Henderson, 210 U. S. 246, 28 S. Ct. 621, 52 L. Ed. 1046, it is specifically held that section 60d does not violate Amendment 7, and that a re-examination of an attorney's fee paid in contemplation of bankruptcy may be properly had in a summary proceeding.

The remaining question is as to the adequacy of the fee fixed by the District Court. Only $300 was allowed because the court limited the fee to compensation for services "germane to bankruptcy" under some of the prior decisions we have already referred to which are now overruled by the Supreme Court in Conrad, Rubin & Lesser v. Pender, Trustee, supra. A fee of $300 might have been sufficient remuneration for such services after February 21, 1931, as consisted of arranging for and drawing the composition agreement and giving advice in connection with it. But the additional services in connection with the criminal proceedings against Omdal and the defense of Buchanan in the action brought by the Attorney General under the Martin Act came within section 60d and justified further compensation. We think a fee of $750 is fair for all services between February 21 and March 9. The services prior to February 21 were covered by the first fee of $1,000. Compensation out of the estate for any services rendered after the filing of the petition in bankruptcy must be sought under section 64b of the act (11 US CA § 104(b), and General Order 42 (11 US CA § 53), and cannot be had in the present proceeding. In re Falk (C. C. A.) 30 F.(2d) at page 610.

The order of the District Court should be so modified as to direct the respondents to return $1,750 of their fee of $2,500 to the Irving Trust Company, as trustee. The balance, to wit, $750, is fixed as the value of the services rendered by the respondents to the bankrupts between February 21 and March 9, 1931.

Order modified accordingly.