In the Matter of CASCO FASHIONS, INC., Bankrupt.

NEW YORK CREDIT MEN'S ADJUST-MENT BUREAU, INC., Trustee, Appellant,

v.

BALLON, STOLL & ITZLER, Appellee.

No. 71, Docket 72–1961.

United States Court of Appeals, Second Circuit.

Argued Nov. 7, 1973.

Decided Dec. 17, 1973.

Julius J. Abeson, New York City (Hahn, Hessen, Margolis & Ryan, New York City, of counsel), for appellant.

Ronald S. Itzler, New York City (Ballon, Stoll & Itzler, New York City, of counsel), for appellee.

Before WATERMAN, FRIENDLY and TIMBERS, Circuit Judges.

FRIENDLY, Circuit Judge:

This appeal from an order of the District Court for the Southern District of New York was presented to us as raising the question whether attorneys for a debtor in possession in a proceeding under Ch. XI of the Bankruptcy Act, which has been superseded by an ordinary bankruptcy proceeding pursuant to § 376, may be awarded compensation out of the estate for legal services rendered during the aborted Ch. XI proceeding. The district judge answered the question in the affirmative and the trustee in bankruptcy has appealed.

## I.

Although the proceedings here at issue involved both Casco Fashions, Inc. and its affiliate Kuro Fashions, Ltd., it will generally be convenient to refer only to Casco. In July 1969, it filed a Ch. XI petition for an arrangement under § 322 and was authorized to continue as debtor in possession. Pursuant to General Order 44, it was authorized to retain as counsel Ballon, Stoll & Itzler (hereafter the Ballon firm), to whom it had paid a retainer of $15,000 before the filing of the petition. The Ballon firm rendered substantial legal services during the Ch. XI proceeding. These included the renegotiation of a factoring arrangement, apparently expanded in renegotiation to include considerable inventory financing, and preparation of applications for its approval and periodic renewal; preparation of the required schedules, statement of affairs and list of executory contracts; negotiation of the settlement of the claim of an equipment rental company against Casco, and preparing an application for approval; negotiating the sale of Casco's leasehold, which was no longer needed in view of the consolidation of its operations with Kuro's and preparing the necessary papers; resisting and attempting to settle a claim for the imposition of a mechanic's lien on the proceeds of the sale; resisting and attempting to settle, prior to successful negotiation of the sale of the leasehold, a motion by the landlord of the leased premises to be permitted to commence summary eviction proceedings against the debtor, largely because of the filing of the mechanic's lien on the premises; negotiation of a sublease of premises in New Jersey and preparing an application for approval; negotiating with the creditors' committees and preparing papers for the consolidation of the proceedings of Casco and Kuro; and negotiating with the creditors' committee and preparing a plan of arrangement which was accepted by the committee. The plan aborted before formal acceptance under § 336 for reasons not appearing clearly of record but acknowledged not to be attributable to any fault of the Ballon firm. Ultimately on April 23, 1970, an order was made, pursuant to § 376, adjudging the debtor a bankrupt and directing that the bankruptcy be proceeded with under the other provisions of the Act.

New York Credit Men's Adjustment Bureau, Inc., the trustee in the bankruptcy proceeding, then applied to the referee under the first paragraph of § 60d [1] for a review of the $15,000 pay-

---

1. If a debtor shall, directly or indirectly, in contemplation of the filing of a petition by or against him, pay money or transfer property to an attorney at law, for services rendered or to be rendered, the transaction may be examined by the court on its own motion or shall be examined by the court on petition of the trustee or any creditor and shall

ment by Casco to the Ballon firm in contemplation of the filing of the petition. The firm cross-petitioned "for the dual purpose of opposing the motion of the Trustee herein pursuant to Section 60(d) of the Bankruptcy Act, and supporting your petitioner's application for an allowance for professional services rendered to the debtors-in-possession and the bankrupts [2] subsequent to the filing of the original petitions for an arrangement . . . ." It asked that the entire $15,000 be decreed fair and reasonable compensation for the sum of its services before and after the filing of the Ch. XI petition.

Understanding will be promoted if we here interrupt the narrative to set forth the Second Circuit precedents with regard to § 60d which establish the context within which the referee was working. In a line of cases of ordinary bankruptcy, this court had held that the services for which a "reasonable amount" may be retained in proceedings under § 60d, *supra* note 1—as distinguished from the possibility of collection under other sections of the Act—include only those rendered while the debtor was contemplating bankruptcy and not those rendered after the proceedings had commenced. In re Rolnick, 294 F. 817 (2 Cir. 1923); In re Falk, 30 F.2d 607 (2 Cir. 1929); In re David Bell Scarves, Inc., 61 F.2d 771, 773 (2 Cir. 1932), aff'd sub nom. Conrad v. Pender, 289 U.S. 472, 53 S.Ct. 703, 77 L.Ed. 1327 (1933) (Supreme Court citing In re Rolnick, *supra,* with approval, 289 U.S. at 476, 53 S.Ct. 703); In re Buchanan, 66 F.2d 416, 419 (2 Cir.), cert. denied, 290 U.S. 682, 54 S.Ct. 120, 78 L.Ed. 588 (1933). The case of In re Knickerbocker Leather & Novelty Co., 158 F.Supp. 236 (S.D.N.Y.1958), aff'd sub nom. Haar v. Oseland, 265 F.

2d 218 (2 Cir. 1959) (per curiam), raised the question whether the same rule applied when the post-petition legal services were rendered to a debtor in possession under Ch. XI. Judge Sugarman there sustained an order of a referee directing the return of the bulk of a pre-petition payment, refusing by so doing to allow any amount for services rendered after filing of the Ch. XI petition, but added that this did not preclude a subsequent application for compensation for post-petition services under § 64a(1) upon notice under § 58a(8). Cf. In re Falk, *supra.* This court affirmed per curiam on the opinions below, saying:

> The order, of course, did not purport to preclude an application for an allowance as an expense of the administration of the estate.

265 F.2d at 219.

Relying on this and other authorities, the referee in the instant case found that $3,000 constituted a reasonable fee for pre-petition services and directed that $12,000 be returned. He said nothing about an allowance under § 64a(1); but his reference to the *Knickerbocker* case (at the Second Circuit level) could be taken as indicating that this subject remained open for later consideration. After a rehearing held at the Ballon firm's request, the referee adhered to his initial determination; his remarks during the argument on rehearing lend more support to the proposition that he was leaving open the subject of a possible allowance under § 64a(1) than to any suggestion that he was precluding such an allowance.

In their petition for review, the Ballon firm asserted, among other things, that it was error for the referee not to consider their application as under §

---

be held valid only to the extent of a reasonable amount to be determined by the court, and the excess may be recovered by the trustee for the benefit of the estate.

\* \* \* \* \*

2. Although the cross-petition before the referee rested in some part on services rendered after Casco was adjudicated bankrupt, the Ballon firm's petitions to review the referee's orders were limited to his treatment of fees earned as counsel to the debtor in possession. Any issue with respect to the firm's services after adjudication was therefore not before the district court and is not before us.

64a(1); [3] the referee certified this as one of the alleged errors to be reviewed; and the parties apparently argued at length before the district court whether, among other things, § 64a(1) permitted an allowance such as that sought by the firm. The court found that, in contrast to the situation in *Knickerbocker*, there had here been notice of the application conforming to § 58a(8), which is no longer disputed. Judge Lasker then ruled, relying on a passage in 3A Collier, Bankruptcy 1601 (14th ed. 1969), which we do not find particularly conclusive, that the referee was bound to consider the application on its merits then and there. 346 F.Supp. 1252, 1255 (1972). Although any fee to the Ballon firm for its services in the Ch. XI proceeding would be subordinated to administration expenses in the ensuing bankruptcy by virtue of the final sentence of 64a(1), [4] the judge thought this unimportant in the instant case in view of the amount of the assets and of the probable administrative and legal expenses. *Id.* at 1255–1256. Accordingly, he proceeded to the merits and held that attorneys for a debtor in possession under an aborted Ch. XI proceeding were entitled to a proper allowance under § 64a(1) in a subsequent bankruptcy. *Id.* at 1256. Judge Lasker issued an order remanding to the referee for determination of the amount of legal fees earned by the Ballon. firm as counsel to the debtor in possession in addition to the $3,000 already awarded for pre-petition services to the debtor.

## II.

■ If the trustee had sought reversal here on the basis that the referee did not abuse his discretion in deferring consideration of the application under § 64a(1), we might well have agreed. Convenience may be served by considering all claims for administration expenses, and particularly for attorneys' fees, at one time. Optimistic prognostications of the sufficiency of assets to meet the administration expenses of the superseding bankruptcy may prove erroneous. Moreover, a single consideration enables the referee to take into account the totality of the claims for administration expenses as against the amount available for creditors. However, appellant has not asked us to reverse the district court on that ground; apparently both sides desire a determination on the merits of a question important in the administration of the Bankruptcy Act, as to which the decisional law does not establish a clear answer, at least in this circuit. In affirming, as we do, we are not to be taken as deciding that a referee in every case must fix such compensation on a petition filed by the attorneys in response to one filed by the trustee under § 60d; decision whether to fix the compensation then or to postpone the issue lies in the referee's sound discretion.

## III.

■ Turning to the merits, we begin by agreeing with the trustee that the permissibility of awarding fees under § 64a(1) for services as attorney for a debtor in possession in an aborted Ch. XI proceeding was not decided by this court in Haar v. Oseland, *supra*, 265 F. 2d 218, although the Ballon firm is not alone in reading that case to validate such awards. See, *e. g.*, In re Shon

---

3. Their application had been titled "Petition of Debtor's Counsel in Opposition to Trustee's § 60(d) Application and in Support of Application for Allowance *Under § 64a(1)*." (Emphasis supplied.)

4. Where an order is entered in a proceeding under any chapter of this title directing that bankruptcy be proceeded with, the costs and expenses of administration incurred in the ensuing bankruptcy proceeding, including expenses necessarily incurred by a debtor in possession, receiver, or trustee in preparing the schedule and statement required to be filed by section 638, 778, or 883 of this title, shall have priority in advance of payment of the unpaid costs and expenses of administration, including the allowances provided for in such chapter, incurred in the superseded proceeding and in the suspended bankruptcy proceeding, if any . . . .

Indus., Ltd., No. 64–B–11 (E.D.N.Y. Oct. 1, 1965); In re Styles Express, Inc., No. 62–B–922 (S.D.N.Y. Dec. 9, 1971); In re B.N.S. Int'l Sales Corp., No. 69–B–169 (S.D.N.Y. April 27, 1971) (Herzog, Referee in Bankruptcy). Such question as was raised in *Haar* with regard to the later opportunity of the attorneys to obtain compensation under § 64a(1) was tangential to the main arguments in the case, and did not in any event concern the very authority of the referee under § 64a(1) to compensate services in the aborted proceeding. This court therefore did not rule on the question whether such authority exists; rather, we merely affirmed the district court's ruling that in that case compensation did not have to be—indeed in view of the lack of notice could not be —fixed on the hearing of a motion under § 60d. The most that the Ballon firm can extract from Haar v. Oseland is that this court would not have said what it did if it had thought that an application under § 64a(1) would necessarily be futile. This carries negligible weight when the court in that case had not been furnished the substantial arguments against the legality of an allowance that have been here presented.

At first blush the provision in § 64a(1) to which we have already referred, see note 4 *supra,* would seem to imply that legal services rendered to the debtor in possession in an aborted Ch. XI proceeding may be allowed in a subsequent bankruptcy, although they must be subordinated to the administration expenses of the bankruptcy itself. The trustee argues with force that this is reading the statute too quickly and fails to give the necessary significance to the words "including the allowances provided for in such chapter." Allowances for attorneys for a debtor in possession or a trustee are provided for in Ch. X, §§ 241, 242 and 246, and in Ch. XII, Real Property Arrangements, §§ 491,

492 and 495, but there is no corresponding provision in Ch. XI. The closest approach to such a provision in Ch. XI is § 337(2), specifying that, after the acceptance of the arrangement, the judge shall fix a time within which the debtor shall deposit the consideration distributable to creditors, the money necessary to pay priority claims, and "the money necessary to pay the costs and expenses of the proceeding." Since here apparently no such deposit was made, appellant contends that no compensation may be allowed, a position sustained in Robinson, Wolas & Hagen v. Gardner, 433 F.2d 1104 (9 Cir. 1970).[5]

While the argument is impressive, we think it unduly literal. It ignores the necessary implications of § 342, providing that where no receiver or trustee is appointed, the debtor shall continue in possession of his property "and shall have all the title and exercise all the powers of a trustee appointed under this [Act]." In light of that section and the applicability, by virtue of § 302, of the provisions of Chs. I–VII insofar as they are not inconsistent or in conflict with the provisions of Ch. XI, a Ch. XI debtor in possession has the power, and the duty, among other things, to avoid liens under § 67a, to avoid transfers and obligations under § 70e, and to recover preferences under § 60b. See 8 Collier, Bankruptcy ¶ 6.32 and particularly 6.32 [7] (14th ed. 1971). It would have been odd for Congress to have imposed such duties on attorneys for a debtor in possession—for it is they rather than the debtor who generally must perform them —but to have ruled out any payment for them in cases where, through no fault of the attorneys, bankruptcy ensues but there are assets adequate for paying such expenses as well as those in the bankruptcy. This is particularly true since what the attorneys for the debtor have accomplished along the lines indicated will diminish *pro tanto* the work

---

5. Appellant goes further and says that even where a deposit is made but confirmation fails, no compensation may be paid out of

the deposit. See § 367(2). *Robinson* did not reach this issue. See 433 F.2d at 1106 n.2.

that must be performed by the attorneys for the trustee, and failure to compensate them would constitute an unjust enrichment of the creditors at the expense of attorneys working in good faith with the approval and at the direction of the bankruptcy court.

Moreover, the argument made by the trustee proves too much. If compensation for services in an aborted Ch. XI proceeding cannot be awarded to attorneys for a debtor in possession because there is no specific provision for an allowance, the same would be true of attorneys for a receiver appointed under § 332 or for a trustee in bankruptcy continued in possession under that section. Congress could not have contemplated such a result. We therefore adopt the approach of the dissenting opinion of Chief Judge Hastie, joined by Judges Aldisert and Stahl, in In re Hydrocarbon Chems., Inc., 411 F.2d 203, 207–210 (3 Cir.) (en banc), cert. denied, 396 U. S. 823, 90 S.Ct. 66, 24 L.Ed.2d 74 (1969), citing Application of Pinetree Associates, Inc., 77 F.Supp. 270 (E.D. N.Y.1948), insofar as here relevant, and hold that the general provisions of § 62 constitute sufficient authority [6] for an allowance to attorneys for a debtor in possession in an aborted proceeding under Ch. XI.[7]

The briefs contain much discussion of the provision in § 339(2) that expenses of a creditors' committee, including attorneys' fees, "shall be allowed as an expense of administration to the extent deemed reasonable and necessary by the court, provided the arrangement is confirmed." Citing Referee Herzog's decision in In re Styles Express, Inc., No. 62–B–922 (S.D.N.Y. Oct. 8, 1971), confirmed, *supra*, Dec. 9, 1971 (Bonsal, J.), the Ballon firm argues that the proviso with respect to expenses of committees

shows a Congressional intention not to impose such a limitation on the attorneys for a debtor in possession; this is supposed to prove, among other things, that the *Robinson* court erred in reading the predecessor of § 339(2), namely § 337(2) as it read before 1967, to impose the proviso on attorneys for a debtor in possession. Although we neither regard the legislative history of § 339(2) as having the strength thus urged nor read Judge Hufstedler's opinion in *Robinson* as resting on the proviso as it previously appeared in § 337(2), the argument is worth some examination.

Section 337(2) had originally required, so far as here relevant, that the debtor must, after acceptance of the arrangement, deposit "the money necessary to pay the costs and expenses of the proceedings and the actual and necessary expenses incurred in connection with the proceedings and the arrangement by the committee of creditors and the attorneys or agents of such committee, in such amount as the court may allow." 52 Stat. 908 (1938). The final phrase was amended in 1952, 66 Stat. 432, to read "and the actual and necessary expenses, in such amount as the court may allow, incurred after its appointment by a committee appointed pursuant to section 338 of this Act, or incurred before or after the filing of the petition under this chapter by a committee designated in writings filed with the court and signed and acknowledged by a majority in amount of unsecured creditors . . . *Provided, however,* That in fixing any such allowances the court shall give consideration only to the services which contributed to the arrangement confirmed or to the refusal of confirmation of an arrangement, or which were beneficial in the administration of the estate, and the proper costs and expenses incidental thereto."[8] The 1952

6. By virtue of § 302, § 62 applies to Ch. XI unless inconsistent or in conflict. We think it is neither.

7. The majority opinions in the Third Circuit are not to the contrary in this regard.

8. Although this amendment omitted, by apparent inadvertence, see 2 U.S.Code Cong. & Admin.News, p. 3810 (1958) (Letter to Senator James O. Eastland, Chairman, Committee on the Judiciary, from Edwin L. Covey, Chief of the Division of Bankrupt-

amendment had a two-fold purpose—to include an unofficial committee which had functioned prior to appointment under § 338, thus overruling Lane v. Haytian Corp. of America, 117 F.2d 216 (2 Cir.), cert. denied, 313 U.S. 580, 61 S.Ct. 1101, 85 L.Ed. 1537 (1941), and to define the types of services by committees which were entitled to compensation. See H.R.Rep.No.2320, 82d Cong., 2d Sess., reprinted in 2 U.S.Code Cong. & Admin.News 1960, pp. 1980, 1981 (1952). Under that amendment Congress recognized the propriety of compensating attorneys for a creditors' committee for services beneficial to an estate even though an arrangement was not confirmed, although only out of the deposit required by § 337. It was under this form of the statute, as perfected by the 1958 amendment, see note 8 *supra*, that the *Robinson* controversy arose.

The statute was further amended in 1967, 81 Stat. 516–517, with the provisions related specifically to expenses of committees being placed separately in new § 339. Again the purpose was two-fold—to remedy certain deficiencies in the 1952 overruling of the *Haytian* case and to limit the type of compensable services by a creditors' committee more narrowly than in the 1952 legislation. See S.Rep.No.750, 90th Cong., 1st Sess., reprinted in 2 U.S.Code Cong. & Admin.News, p. 2007 (1967).

As indicated above, we cannot agree with the Ballon firm that the *Robinson* court made the error of applying the proviso to § 337(2) in its pre-1967 form to attorneys for a debtor in possession. The decision rested rather on the absence of any specific provision "for compensating the unsuccessful Chapter XI attorney," 433 F.2d at 1106, in a case that had not advanced to the making of a deposit under § 337. Nothing in Judge Hufstedler's opinion suggests that she misread Congress' intention in 1952 to recognize the propriety of compensating attorneys for a creditors' committee for services beneficial to an estate even though an arrangement was not confirmed or applied such a misreading to attorneys for a debtor in possession. The *holding* of *Robinson* turns rather on the requirement at the outset of § 337 that the plan first be accepted.

Further, we reject the contention that the 1967 amendment, which Judge Hufstedler had before her although it did not apply to the facts of her case, undercuts the logic of *Robinson* as we have just read the opinion. That amendment left intact the § 337 requirements of acceptance and a deposit on which the Ninth Circuit opinion turned.[9] Indeed, we have already said that we recognize under the current statute the substantial technical force of the *Robinson* court's argument.[10] However, for the reasons advanced in this opinion, above all what we consider the fundamental unfairness of the Ninth Circuit's result, we prefer to find authority in § 62 for allowance of fees to the attorneys for a debtor in possession in an abortive Ch. XI pro-

---

cy, Administrative Office of the United States Courts, June 13, 1957), the words "and the attorneys or agents of such committee" that had appeared in the original, this was corrected in 1958 by insertion of the phrase "including fees and expenses of attorneys, accountants and agents." 72 Stat. 821.

**9.** We reject the conflicting analysis offered by an extraordinarily bold referee within the Ninth Circuit in In re S & S Vending Machine Co., No. 571–1585–C (N.D.Cal. Mar. 20, 1973) (Cowans, Referee in Bankruptcy), although we think he reached the right result. Referee Cowans read the *Robinson* opinion to rest on the proviso that appeared before

1967 in § 337(2) and therefore to be without force under the amended statute.

**10.** The trustee relies also on In re Times Sales Finance Corp., No. 30377 (E.D.Pa. 1972), aff'd without opinion, 475 F.2d 1396 (3 Cir.), cert. denied, 42 U.S.L.W. 3199 (Oct. 9, 1973). However, in that case, although the point does not appear clearly from either the referee's opinion or that of the district court, the Ballon firm informs us that a receiver had been appointed under § 332, and the fee application that was denied was by counsel for a debtor not in possession. Such a debtor does not have the powers conferred on a debtor in possession by §§ 342 and 343.

**1204**

ceeding. The statute is not a tidy one, but we must make the best sense of it that we can until Congress acts on the proposal now pending before it for a complete revision of the Bankruptcy Act.

 We are simply unable to share the view that in passing the Chandler Act Congress deliberately chose to make life hazardous for attorneys for debtors in possession, even in wholly legitimate Ch. XI proceedings, compare In re Dole Co., 244 F.Supp. 751, 756–757 (D.Me. 1965).[11] The Supreme Court has recognized the value of Ch. XI for "small individual or corporate business where there are no public or private interests involved requiring protection by the procedure and remedies afforded by chapter X," SEC v. United States Realty & Improvement Co., 310 U.S. 434, 454, 60 S. Ct. 1044, 84 L.Ed. 1293 (1940). No other machinery, save ordinary bankruptcy, is available to the individually owned business and, even for corporations, Ch. X requires a petition to state "the specific facts showing the need for relief under this chapter and why adequate relief cannot be obtained under Chapter XI of this Act," § 130(7); cf. § 146(2). To be sure, if a court finds that a Ch. XI proceeding was filed without any reasonable prospect of success or in an effort to head off an inevitable adjudication of bankruptcy, compensation to a debtor's attorneys should be denied. It may also be, although we do not now decide this, that services in formulating an arrangement that was not accepted should not be compensated, cf. In re Tariffville Mfg. Co., 253 F.Supp. 412 (D.Conn.1965), or should be compensated only at subnormal rates; certainly

this should be true if the proposed arrangement was so unfair that creditors could not be expected to accept. But when the institution of the Ch. XI proceeding was legitimate, we believe the attorneys for a debtor in possession are entitled, subject to the subordination described in § 64a(1), to fair compensation for legal services in assisting the debtor to perform the duties imposed by the statute and in operating the business with a view to its preservation so long as that goal seems reasonably attainable.

Affirmed.

---

11. The trustee has relied rather heavily, particularly at argument, on the statements in Nicholas v. United States, 384 U.S. 678, 685–686 & n.13, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966), that adjudication marks a division between two separate proceedings, but see *id.* at 696, 86 S.Ct. 1674, 1686 (Harlan, J., concurring in part and dissenting in part) ("it seems to me that the entire period starting with the Chapter XI operation and carrying through the bankruptcy proceeding should be regarded as a continuum of court

administration"), and that nothing in the Bankruptcy Act "requires us to collapse these important distinctions between an arrangement proceeding and a superseding bankruptcy . . . ." The question in *Nicholas* was whether the Government could claim interest and penalties, in a superseding bankruptcy, on a tax liability accumulated during an abortive Ch. XI proceeding. That case thus raised issues totally different from this one.